IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CHRISTOPHER H.,[1] | No. 3:20-cv-1008-MO |
| Plaintiff, | OPINION & ORDER |
| v. | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

MOSMAN, District Judge:

    This matter comes before me on Plaintiff Christopher H.'s Complaint [ECF 1] against Defendant Commissioner of the Social Security Administration. For the reasons given below, I AFFIRM the Commissioner's decision and DISMISS this case.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

1 – OPINION & ORDER

## PROCEDURAL BACKGROUND

On January 3, 2018, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging disability beginning December 1, 2015. Tr. 20, 388. The Social Security Administration ("SSA") denied his claim initially and upon reconsideration. Tr. 68-80. Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Elizabeth Watson on May 28, 2019. Tr. 36-66. On July 1, 2019, the ALJ issued a decision denying Plaintiff's claims for benefits. Tr. 17-33. Plaintiff filed an appeal, and the Appeals Council denied review. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 1, 2015, the alleged onset date. Tr. 22. At step two, the ALJ found the following severe, medically determinable impairments: Parkinson's disease, obstructive sleep apnea, hypophonia, and hypokinetic dysarthria. Tr. 22. At step three, the ALJ found no impairments that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 23. The ALJ assessed Plaintiff's residual functional capacity ("RFC"), as follows:

> to perform light work as defined in 20 CFR 404.1567(b). The claimant can occasionally lift and carry up to 20 pounds and frequently lift and carry up to 10 pounds. He is limited to six hours sitting, six hours standing and five hours walking in an eight hour workday, with normal breaks. He must be allowed to alternate sitting and/or standing positions as needed throughout the day, while remaining on task. He is limited to occasional climbing of ramps or stairs and no climbing of ladders, ropes, or scaffolds. He is limited to occasional balancing, stooping, crouching, and crawling. He is limited to frequent kneeling. He is limited to frequent bilateral reach in all directions. He is limited to frequent bilateral handling and fingering. He is limited to frequent bilateral push and/or pull with the upper extremities. He is limited to occasional operation of foot controls with the right. He must avoid concentrated exposure to vibration.

Tr. 23.

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work as a software programmer analyst. Tr. 26. At step five, the ALJ found that Plaintiff also retained the ability to perform other jobs in the national economy. Tr. 27-28. The ALJ therefore found Plaintiff not disabled from the alleged onset date of December 1, 2015, through July 1, 2019, the date of the ALJ's unfavorable decision. Tr. 28.

## LEGAL STANDARD

Courts must uphold the ALJ's decision if it "was supported by substantial evidence and based on proper legal standards." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation ... the ALJ's conclusion ... must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff raises two primary issues with the ALJ's decision. First, he contends that the ALJ unreasonably discounted his symptom testimony without clear and convincing reasons for doing so. Second, he argues the ALJ incorrectly evaluated the medical evidence by giving little weight to Dr. Joanna O'Leary's opinion that Plaintiff would be absent from work multiple days per month due to fatigue and apathy. I address each issue in turn.

I.    **Subjective Symptom Testimony**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom

evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

At the hearing, Plaintiff testified that his Parkinson's disease causes significant fatigue, which began to be a problem at work in late 2015. Tr. 41. He testified that he naps "sometimes quite a bit…from 5 to 15 times a day…from 15 minutes to a couple hours." Tr. 42. Plaintiff's medications help give "more fluidity in [his] hands," but make him "really, really tired." Tr. 46. He testified that his mirroring symptoms forced him to type one finger at a time because "if I try to type or something my right hand does what my left hand does," and his fingers go spastic. Tr.

50-51. He indicated he can type for about a half-hour or hour at a time, but that his typing was slow, with "errors everywhere." Tr. 52. He also reported unpredictable right foot spasms. Tr. 52. Plaintiff testified he sometimes stretches every half-hour and sometimes every couple of hours, for anywhere from three to ten minutes. Tr. 53-54.

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and did not identify evidence of malingering. Tr. 24. However, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 24. Specifically, the ALJ found Plaintiff's symptom allegations were inconsistent with the objective medical evidence, inconsistent with his activities of daily living, and that Plaintiff's conditions improved with treatment. Tr. 24.

*A. Objective Medical Evidence*

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Indeed, "[w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022)(emphasis in original); s*ee also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record).

The ALJ reasonably discounted Plaintiff's testimony about fatigue, tremors, instability, and dyskinesia as inconsistent with the record. Conflict with objective medical evidence is a sufficient basis for discounting a claimant's testimony. *Smartt*, 53 F.4th at 498; 20 C.F.R. §§

404.1529(c)(2), 416.929(c)(2). At the hearing, Plaintiff testified that he was unable to work due to, *inter alia*, fatigue, muscle spasms, and dyskinesia. Tr. 41-54. The ALJ acknowledged that while these symptoms of Plaintiff's young-onset Parkinson's disease limited his ability to work, these particular symptoms did not do so to the extent Plaintiff alleged. Tr. 25-26. The ALJ reasonably contrasted Plaintiff's allegations of fatigue with medical records showing his sleep was better-controlled after using a CPAP machine. Tr. 24, 550-51, 714. For example, the ALJ cited an October, 2018 appointment where Plaintiff reported being less sleepy during the day with better nocturnal sleep with use of a CPAP. Tr. 24, 714. The ALJ also cited several medical records reflecting only mild issues with agility, dexterity, and dyskinesia, which further undermined Plaintiff's testimony that these limitations were disabling. Tr. 25, 840-45 At medical visits throughout the relevant period—late 2017 to 2018—Plaintiff showed either no rigidity, tremors, or dyskinesias, or only mild postural instability and mild dyskinesia and an occasional resting left hand tremor. Tr. 24-25, 551-52, 826-29. The ALJ's decision to discount Plaintiff' testimony about these symptoms was clear, convincing, and supported by substantial evidence.

      Plaintiff argues this rationale is not supported by substantial evidence because the medical evidence the ALJ cited does not, in fact, undermine Plaintiff's testimony about mirroring, fatigue, or muscle rigidity symptoms. At least with respect to mirroring, Plaintiff is correct; the ALJ did not discount his symptom allegations of mirroring, and so cited no medical records inconsistent with his allegations of mirroring symptoms. *See* Tr. 25-26. The medical records the ALJ cited do conflict with his testimony about fatigue and muscle rigidity, however. As detailed above, medical evidence about the effectiveness of the CPAP machine on Plaintiff's fatigue and mild or negative findings of muscle rigidity underpinned the ALJ's decision to discount that symptom testimony. Plaintiff's further arguments about the sufficiency of the

ALJ's evidence are an effort to have this Court re-weigh the evidence, which this Court may not do. *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (noting "[w]e may not reweigh the evidence or substitute our judgment for that of the ALJ"). This is a clear and convincing reason, supported by substantial evidence, for the ALJ to cite to discount Plaintiff's subjective symptom testimony.

      B.     *Improvement with Treatment*

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). If the record shows a claimant's symptoms have improved with treatment, that improvement is "an important indicator of the intensity and persistence of ... symptoms." 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The Ninth Circuit has held that "evidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017). Additionally, an ALJ may consider a claimant's unexplained or inadequately explained failure to follow a prescribed course of treatment. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ reasonably concluded that Plaintiff's motor symptoms and fatigue improved with treatment which undermined his hearing testimony concerning the severity of those symptoms. Although Plaintiff complained that he was unable to work due to his hand tremors and fatigue (Tr. 257), the ALJ noted that Plaintiff treated his tremors effectively with medication and his sleep with CPAP. Tr. 24-25. For example, the ALJ cited a February 2018 visit which showed "some improvement" in his hand tremor on Rytary, and that "he was less sleepy during the day" after starting CPAP for his sleep apnea, in combination with melatonin. Tr. 714. Neither was a perfect fix, but subsequent appointments showed a "significant improvement" in Plaintiff's

tremors and confirmed that Plaintiff "continue[d] to do well on current dose of Rytary." Tr. 840, 846. The CPAP machine likewise improved his sleep symptoms: "[h]e used to only be able to sleep for about 2 hours. Now he can sleep 4-6 hours." Tr. 549. This is therefore another clear and convincing reason, supported by substantial evidence, and the Court therefore upholds the ALJ's decision to discount Plaintiff's testimony on the basis that his symptoms improved with treatment.

    C.    *Daily Activities*

The ALJ also reasonably discounted Plaintiff's subjective symptom testimony about the disabling effects of his tremor symptoms because it was inconsistent with his reported daily activities. Tr. 25. Activities of daily living can form the basis for an ALJ to discount a claimant's testimony in two ways: (1) as evidence a claimant can work if the activities "meet the threshold for transferable work skills"; or (2) where the activities "contradict [a claimant's] testimony." *Orn*, 495 F.3d at 639. The relevant regulations require an ALJ to consider a claimant's daily activities when evaluating subjective symptom statements. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). "An ALJ may consider any work activity, including part-time work, in determining whether a claimant is disabled." *Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020).

The ALJ reasonably cited Plaintiff's part-time work as further evidence that his symptoms were not completely disabling. The ALJ noted that Plaintiff had volunteered writing code since at least the amended alleged onset date, and had volunteered with students learning to code (at least initially) three to four days a week for a couple hours a day. . Tr. 25, 45, 46, 724. Even when activities do not show transferable work skills or an ability to work full-time, they "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir.

8 – OPINION & ORDER

2012). The ALJ reasonably found that Plaintiff's part-time volunteer work, while limited, undermined Plaintiff's allegations of disability. Plaintiff does not contest this basis for discounting his subjective symptom testimony in his briefs. *See* Pl. Br., Pl, Reply, ECF Nos. 21, 24. This was therefore another clear and convincing reason, supported by substantial evidence, for the ALJ to cite to discount Plaintiff's symptom allegations.

## II.     Medical Evidence

For claims filed after March 27, 2017, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing

9 – OPINION & ORDER

an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

In May 2019, Dr. O'Leary provided a statement regarding Hays's functioning. Tr. 981-82. Dr. O'Leary opined Hays could perform sedentary work that does not require him to regularly speak reliably and clearly. Tr. 982. She opined Hays's fine motor skills are significantly limited. Tr. 982. She opined Hays would be absent from work "days" in a month and would be distracted due to fatigue. Tr. 982. Dr. O'Leary further noted that Plaintiff's "ability to type and engage in other fine motor skills is significantly limited. Such tasks are extremely effortful for him and mirroring interferes with accuracy in those tasks." Tr. 982. Finally, she opined he would need an "accommodation to take a break at will to perform stretches as needed," including stretching while laying down. Tr. 982. The ALJ considered Dr. O'Leary's opinion but found it less persuasive than the other opinion evidence and administrative medical findings based on its lack of support and inconsistency with the record. Tr. 26. Plaintiff argues the ALJ "erred by rejecting Dr. O'Leary's opinion that Plaintiff would be absent from work multiple days per month due to fatigue and clinical apathy without giving specific and legitimate reasons supported by substantial evidence." Pl. Br. ECF No. 21 at 10.

The ALJ sufficiently considered the supportability of Dr. O'Leary's opinion. The supportability factor looks to the relevant objective medical evidence—that is, clinical signs and diagnostic findings, *see* 20 C.F.R. §§ 404.1502(c), (f), (g)—and the supporting explanations a medical source provides for their opinions. 20 C.F.R. § 404.1520c(c)(1). "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation" when evaluating a medical opinion. *Ford v. Saul,* 950 F.3d 1141, 1155 (9th Cir. 2020). First, the ALJ explained that Dr. O'Leary's opinion that Plaintiff would be absent from work multiple

10 – OPINION & ORDER

days per month was not supported by her own objective findings. Tr. 26. For example, Dr. O'Leary noted Plaintiff's "mild" "slight" or "normal" physical symptoms were stable on medication, with fatigue and possible apathy being his biggest complaints. Tr. 26, 732. She ultimately suggested the fatigue symptoms could be resolved if Plaintiff increased his caffeine intake and exercised more. Tr. 732. Furthermore, Dr. O'Leary's fatigue opinions were equivocal, and did not point to clinical signs or diagnostic findings; Dr. O'Leary found Plaintiff's inability to work writing code was only "possibly" due to his fatigue. Tr. 724. The ALJ reasonably cited all these records in concluding that Dr. O'Leary's opinion that fatigue would keep Plaintiff "absent from fulltime works [*sic*] days in a month" was not fully persuasive. .

      The ALJ also reasonably considered that Dr. O'Leary's opinion about Plaintiff's fatigue causing him to miss work "day in a month" was inconsistent with other record evidence when finding it unpersuasive. An opinion's persuasiveness is in relation to its consistency with evidence from other sources. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *Woods*, 32 F.4th at 792. Specifically, the ALJ relied on Dr. Ogisu's more persuasive opinion, noting his examination did not indicate the level of functional loss that Dr. O'Leary opined and that it was more recent. Tr. 26. Dr. Ogisu's neurological examination noted that Plaintiff's fatigue was attributable to poor sleep quality and that he tended to the children and did light housekeeping. Tr. 25, 827. Dr. Ogisu found Plaintiff had "no progressive fatigue," and that despite his fatigue symptoms he could manage to do work-related activities for a full work day. Tr. 828, 839. The ALJ reasonably relied on Dr. Ogisu's opinion as consistent with the record and found its "sit/stand option accounts for any lower extremity tremor or spams, as well as fatigue." Tr. 26. This was in direct contrast to Dr. O'Leary's opinion that Plaintiff's fatigue would keep him out of work several days per month. Tr. 26, 989. The ALJ therefore reasonably considered the consistency factor

11 – OPINION & ORDER

when finding Dr. O'Leary's opinion was unpersuasive because it conflicted with other, persuasive medical opinions in the record. Because the ALJ reasonably considered the supportability and consistency of Dr. O'Leary's fatigue opinion, and the ALJ's conclusion was supported by substantial evidence, the Court will not disturb the ALJ's finding that Dr. O'Leary's fatigue opinion was unpersuasive.

## CONCLUSION

For the reasons given above, I AFFIRM the Commissioner's decision and DISMISS this case with prejudice.

IT IS SO ORDERED.

DATED:     8/30/2023             .

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

12 – OPINION & ORDER